**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHARLES A. WEHAUSEN,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

**Criminal No. 08-023 (CKK)**
(Civil Action No. 09-1711)

**MEMORANDUM OPINION**
(October 31, 2011)

Presently before the Court is Petitioner Charles A. Wehausen's [11] Motion to Vacate

under 28 U.S.C. § 2255. Wehausen pled guilty to one count of conspiracy to commit mail fraud

in violation of 18 U.S.C. § 371 and one count of tax evasion in violation of 26 U.S.C. § 7201

pursuant to a plea agreement entered on February 11, 2008. On October 31, 2008, on the

conspiracy count, the Court sentenced Wehausen to thirty three (33) months of imprisonment

followed by thirty six months of supervised release, a special assessment of $100, and restitution

in the amount of $188,941.00. On the tax evasion Count, the Court sentenced Wehausen to

thirty three (33) months incarceration followed by thirty six (36) months supervised release, a

special assessment of $100, and restitution in the amount of $55,260.00.[1] Both sentences were to

run concurrently.

Wehausen filed his § 2255 motion on September 2, 2009, seeking to reduce his term of

---

[1] Wehausen's motion incorrectly states that he was sentenced to thirty six months of
incarceration and three years of supervised release. Pet'r's Mot. to Vacate Sentence at 1.
Wehausen's actual sentence was thirty three (33) months of imprisonment and thirty six (36)
months of supervised release on each count, to run concurrently.

incarceration by six months because of (1) ineffective assistance of counsel, and (2) failure of the

Court to adequately consider the sentencing factors set forth in 18 U.S.C. § 3553(a) in light of

*Booker v. United States*, 540 U.S. 220 (2005). The Government submitted its [38] Memorandum

in Opposition on March 15, 2010, including a declaration by Wehausen's defense counsel under

28 U.S.C. § 1746. Wehausen did not file a reply, nor did he submit his initial petition under

penalty of perjury. Therefore, the Court finds the facts as stated in defense counsel's declaration

as uncontroverted. Based upon the parties' briefs, the applicable case law and authorities, and

the record as a whole, for the reasons explained below, the Court finds that Wehausen's claims

are wholly without merit. Accordingly, the Court shall DENY Wehausen's § 2255 motion

without an evidentiary hearing.

## I. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody[2] under sentence of a federal court may

move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that

the sentence was imposed "in violation of the Constitution or laws of the United States, or that

the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §

2255(a). The circumstances under which such a motion will be granted, however, are limited in

---

[2] According to the Federal Bureau of Prison's Inmate locator
(http://www.bop.gov/iloc2/LocateInmate.jsp), Wehausen was released from incarceration on
September 3, 2010. Wehausen's motion challenges only the length of his term of incarceration,
and thus is likely moot as he has already received the relief specifically requested in his motion.
*See Burkey v. Marberry*, 556 F.3d 142, 146-150 (3d Cir. 2009). However, because the parties
briefed the motion prior to Wehausen's release, the Court will presume Wehausen could show
collateral effects from the calculation of his offense level and the length of his sentence, and will
therefore evaluate Wehausen's petition on the merits. *See United States v. McCoy*, 313 F.3d 561,
564 (D.C. Cir. 2002) (en banc).

light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The decision whether or not to hold a hearing is entrusted to the district court's discretion, particularly where, as here, the reviewing judge presided over the proceeding in which the petitioner claims to have been prejudiced. *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1131 (1997). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule Governing Section 2255 Proceedings for the United States District Courts 4(b).

A prisoner may not raise a claim on collateral appeal that he *could* have contested on direct appeal unless he can first demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). "Where a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000) (citing *United States v. Johnson*, No. 98-3110, 1999 WL 414237, at *1 (D.C. Cir., May 28 1999)), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001).

## II. BACKGROUND

*A.     Underlying Conduct*

During the time relevant for the indictment, the Government Services Agency contracted with Preventative Maintenance Services Company ("PM Services") to operate and maintain mechanical equipment at the Cohen and Switzer federal buildings. 02/11/08 Tr. at 16:4-9. Petitioner was employed by PM Services as the Chief Engineer and Project Manager for both buildings. *Id.* at 16:1-6. Wehausen and his supervisor were the primary contacts for the subcontractors employed by PM Services. *Id.* at 16:16-22. Between December 2000 and at least July 2003, at Wehausen's instruction, various subcontractors submitted falsely inflated invoices to PM Services. *Id.* at 18:11-17. PM Services in Washington, D.C. would then submit purchase orders for the inflated amounts to company headquarters in Florida via Federal Express. *Id.* at 18:18-24. The GSA would pay the requested amount to PM Services, which in turn would submit payment to the subcontractor. *Id.* at 19:4-18. The subcontractors would then pay a portion of the excess monies in the form of either cash or check to Wehausen or his supervisor. *Id.* at 19:19-20:1. The checks to Wehausen were made payable to Wehausen's company TNT Heating and Air Conditioning, and deposited in an account established by Wehausen for TNT. *Id.* at 20:2-15. Wehausen received at least $167,209 in kickbacks from PM Services subcontractors. *Id.* at 23:21-24; 28:1-18. Wehausen did not report any of the income on his federal income tax returns in order to avoid the increased tax liability associated with reporting the additional income, which amounted to $55,260 over three years. 2/11/08 Tr. at 20:16-21:19.

*B.     Indictment and Charges*

Plaintiff was indicted by a grand jury on September 28, 2007 on one count of conspiracy

4

to defraud the United States in violation of 18 U.S.C. §§ 371 & 2, and one count of mail and honest services fraud in violation of 18 U.S.C. § 1341, 1346, & 2. Criminal Action No. 07-251 (CKK), ECF. No. 1. The indictment further sought criminal forfeiture in the amount of $373,500 pursuant to 18 U.S.C. § 981(a)(1)(C) (as incorporated by 28 U.S.C. § 2461(c)), which represented the "sum of money equal to the amount of money constituting, or derived from, proceeds obtained, directly or indirectly, as the result of a mail fraud scheme, in violation of 18 U.S.C. § 1341, for which the defendant is jointly and severally liable." *Id.* at 11-12. Wehausen was further charged in an information with one count of attempting to evade or defeat income tax in violation of 26 U.S.C. § 7201. Criminal Action No. 08-cr-23 (CKK), ECF. No. 1.

C.    *Plea Negotiations*

Wehausen retained Mr. Mallon Snyder on October 16, 2007, and later retained Mr. Henry Hunter as a sentencing consultant. Gov't's Ex. A ("Snyder Decl.") at ¶ 3-4. The Government's initial plea offer purportedly listed the loss amount for sentencing as $373,500. Pet'r's Mot. to Vacate Sentence at 5. At Wehausen's direction, Mr. Snyder rejected the Government's initial offer on the basis of the loss amount. *Id.* at 5; Snyder Decl. at ¶ 5. The Government's revised offer stated "[b]oth parties agree that the loss attributable to the defendant's participation in the conspiracy to commit mail [sic, fraud], pursuant to §2B1.1, is at least $167,209. The parties reserve the right to introduce evidence at the time of sentencing concerning the issue of loss in excess of $167,209." Snyder Decl., Attach. A (1/29/08 Plea offer) at ¶ 3. Wehausen reviewed the revised offer with Mr. Snyder (2/11/08 Tr. at 29:13-16), and then instructed Mr. Snyder in writing to accept the revised plea offer (Snyder Decl. Attach. C (1/29/08 Note C. Wehausen to M. Snyder). Pursuant to that agreement, on February 11, 2008, Wehausen pled guilty to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 and one count of tax

5

evasion in violation of 26 U.S.C. § 7201. Case No. 07-251 (CKK), ECF No. 9. Wehausen understood that the offense level for the mail fraud count would be either 10 or 12, depending on what level of loss the Government could prove at sentencing. 2/11/08 Tr. at 36:11-22; 37:21-38:3; 39:10-21.

D.    Sentencing

The United States Probation Department, issued the initial Presentence Investigation Report on August 6, 2008. Gov't's Ex. 3 (Receipt and Acknowledgment of Presentence Report). Mr. Snyder attempted to meet with Wehausen on several occasions, but Wehausen cancelled each appointment. Counsel ultimately discussed the salient provisions of the Presentence Report over the telephone with Wehausen, who, at Mr. Snyder's request, also met with Mr. Hunter to discuss the report. Snyder Decl. at ¶ 9. Both parties identified inaccuracies in the report, and filed their objections on August 18, 2008. *Id.* The Government noted that the amount of restitution apportioned to Wehausen was $188,941, not $202,276 as the report initially indicated. Gov't's Ex. 2 (Gov't's Obj. to Presentence Report, 08/18/08 Ltr. J. Taylor to K. Cave). Wehausen argued the total amount of kickbacks to be $163,244.20, $83,160 of which he claimed was the fair market value of services provided by TNT and billed through the subcontractors. Presentence Report at ¶ 25; Def.'s Mem. in Aid of Sentencing, Case No. 07-251, ECF No. 14, at 3. Wehausen was unable to provide any evidence to support his claim that services were provided for certain amounts alleged as kickbacks due to a fire at his residence which destroyed the alleged relevant records. *Id.* at 2-3. The Government argued the claim was irrelevant because Wehausen hid the existence of TNT from PM Services, so PM Services never agreed to use TNT to provide any services, and because he was already compensated for his services through his PM Services salary. Gov't's Ex. 2. Further on behalf of Wehausen, Mr. Snyder

objected to the total loss amount of $384,500, and noted the two level difference in the guidelines

calculation if the loss total was $384,500 instead of $167,209. Snyder Decl., Attach. G (Def.'s

Obj. to Presentence Report, 08/18/08 Ltr. M. Snyder to K. Cave). Mr. Snyder also reiterated Mr.

Wehausen's claim that some of the funds received in the scheme were for work performed by

TNT.[3] *Id.* The final report dated September 3, 2008 utilized the language from the plea

agreement concerning loss: the parties agreed the loss amount was not less than $167,290, but the

parties were free to present evidence at sentencing regarding the final amount. Presentence

Report at ¶ 7. The report also notes in response to Mr. Snyder's objection, that the loss amount

was based on the total loss attributable to the conspiracy, though for restitution purposes only

$188,941 was apportioned to Mr. Wehausen. *Id.* at p. 21.

In drafting Petitioner's Memorandum in Aid of Sentencing, Mr. Snyder informed

Wehausen that his version of events varied from the accounts of his co-conspirators, and his

position regarding loss was not likely to be successful. Snyder Decl., Attach. I (09/16/08 Ltr M.

Snyder to C. Wehausen). Nevertheless, Mr. Snyder included Wehausen's version of the fraud in

the final memorandum. Def.'s Mem. in Aid of Sentencing at 2-3. During a pre-sentencing

telephonic conference with the Court, Mr. Snyder continued to advocate for Wehausen's position

that the total loss amount should be only $167,209. 09/22/08 Tr. at 6:24-7:7. The Government

indicated that should the amount remain in dispute, the Government would provide Mr.

Lillicotch, one of the co-conspirators, as a witness who would testify to the fact that the

additional monies were part of the kickback scheme encompassed by the conspiracy. *Id.* at 7:16-

---

[3]Defendant's objections also addressed the issue of grouping the offenses for Guidelines purposes. Petitioner does not raise the grouping issue in his motion, and therefore the Court does not re-examine the issue.

24. As the Court pointed out to Mr. Snyder, if Mr. Lillicotch did testify as such, and the Court found his testimony to be credible, as a matter of law the additional amounts would be part of the conspiracy. *Id.* at 11:3-15. Mr. Snyder also argued on Mr. Wehausen's behalf that part of the kickbacks he received were actually for work performed. *Id.* at 16-17. Besides the lack of evidentiary support for this claim, the Government pointed out that in the plea agreement, Mr. Wehausen conceded the loss amount was not less than $167,209 (2/11/08 Tr. at 23:21-24), and thus the breakdown of that amount as payments for services work versus kickbacks was irrelevant. *Id.* 16-17; 19:4-20:20.

Following the telephonic conference with the Court, Mr. Snyder conveyed to Wehausen that his arguments regarding the loss involved in the conspiracy and restitution amounts had not immediately persuaded the Court as to the validity of Wehuasen's position. Snyder Decl. at ¶ 17. After hearing the Government's arguments and questions by the Court as to the nature of proof available to contradict the Government's evidence, Mr. Snyder, as did Mr. Hunter, advised Wehuasen that he should consider agreeing to the loss amount and restitution. It was counsel's view that from a tactical perspective, persisting in those arguments would not result in a lesser prison term. In light of the discussions with Mr. Snyder and Mr. Hunter, Wehausen finally conceded that the total loss amount was at least $200,000, and the apportioned restitution of $188,941 was appropriate. *Id.* at 18. He explained that he was concerned not with the monetary amounts, but with the prospect of jail time. *Id.* Wehausen thus agreed to drop the objection to the loss amount and to waive the evidentiary hearing. *Id.*; *see also* Snyder Decl., Attach. L (Joint Motion Regarding Sentencing Witnesses and Joint Motion for October 31, 2008 Sentencing Date, Case No. 07-251, ECF. No. 18) at ¶¶ 1, 2.

At sentencing on October 31, 2008, the Court began by confirming that the objections to

8

the loss amount and apportionment of restitution had been withdrawn. 10/31/2008 Tr. at 3:5-22.

After resolving the grouping issue, the Court detailed the calculation of the relevant guidelines

ranges for both offenses. *Id.* at 6:22-7:22. Wehausen did not object at that time, or while he was

addressing the court. *See id.* at 34:9-36:16. The Court also heard from the Government, Mr.

Snyder, Wehausen's then-employer, and Wehausen's brother. The Court considered Wehausen's

age, lack of other criminal history, education, job history, mental health, his acceptance of

responsibility, and community involvement, among other factors. *Id.* at 36:17-39:9. However, in

determining Wehausen's sentence, the Court also recognized that Wehausen himself had initiated

the kickback scheme, motivated only by greed, and had he not been laid off, the scheme likely

would have continued unnoticed. *Id.* at 43:3-45:1. Ultimately, this Court sentenced Wehausen

to concurrent terms of 33 months incarceration for each count, followed by 36 months supervised

release, $188,941 restitution to the United States Treasury, $55,260 restitution to the Internal

Revenue Service, and a special assessment of $200.

### III. DISCUSSION

Petitioner seeks to reduce his sentence by six months, on the basis that ineffective

assistance of counsel and errors by Respondent and the Court let to a higher sentence. Each of

Petitioner's alleged errors is evaluated in turn, but none have merit.

*A.      Wehausen Failed To Show Ineffective Assistance Of Counsel*

Wehausen contends that his legal representation was constitutionally deficient when his

counsel failed to object on various bases to the presentence report and at the sentencing hearing.

A defendant claiming ineffective assistance of counsel must show (1) "that counsel's

performance fell below an objective standard of reasonableness under prevailing professional

norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347,

1356 (D.C. Cir. 2008) (citation omitted). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, –U.S.–, 131 S.Ct. 770, 787 (2011). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . [I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of . . . counsel's other litigation decisions." *Id.* at 692. In evaluating ineffective assistance of counsel claims, the Court must give consideration to "counsel's overall performance," (*Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986)), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (*Strickland*, 466 U.S. at 689). Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Petitioner identifies five alleged errors by counsel that purportedly amount to ineffective assistance of counsel: (1) failure to object to the loss amount in the Presentence Investigation Report ("presentence report"); (2) failure to provide Wehausen with a copy of the presentence report; (3) failure to object to the increased loss amount used in sentencing; (4) failure to reconcile the loss and restitution amounts as required by the plea agreement; and (5) failure to

resolve objections to the presentence report during the sentencing hearing.[4] The record shows

that Mr. Snyder did not commit any of the asserted errors, and in any case, Wehausen cannot

show prejudice from any of these "errors."

1.     Counsel Properly Objected to the Presentence Report

Petitioner's initial basis for relief is that his counsel failed to properly object to the loss

amount provided in the initial presentence report. For the first of many times throughout his

petition, Wehausen argues that the loss amount used to calculate the appropriate sentencing

guideline range should have been the amount of kickbacks he actually received ($167,209),

rather than the total amount of kickbacks paid as part of the conspiracy ($384,500). Contrary to

Petitioner's assertion, both Mr. Snyder and the Government objected to the initial presentence

report on the basis that the loss amount was incorrect. Snyder Decl., Attach. G; Gov't's Ex. 2.

The revised presentence report utilized the language regarding loss provided in the plea

agreement. Presentence Report at ¶ 7. Defense counsel objected as necessary to the Presentence

Report. The Court at the sentencing hearing indicated the resolution to the objection prior to

setting the applicable sentencing guidelines range.

2.     Defense Counsel Provided Wehausen with a Copy of the Presentence
       Report

Petitioner alleges he never received a copy of the presentence report until he was

provided one by his case manager from the Bureau of Prisons once incarcerated. Pet'r's Mot. to

---

[4] Wehausen also refers generally to an "improper" two level enhancement of his sentence.
Pet'r's Mot. to Sentence at 2. To the extent this alleges an error other than the increased loss
amount used to calculate Wehausen's mail fraud sentence, this could only refer to the two level
increase in Wehausen's guidelines range for failing to report income of more than $10,000 per
year from criminal activity. Given this increase was explicitly outlined in the Plea Agreement,
Wehausen agreed to the enhancement. Case No. 07-251 (CKK), ECF No. 9, at 2.

Vacate Sentence at 4. Federal Rule of Criminal Procedure 32(e) requires the probation office to provide the defendant, the defendant's attorney, and the Government with copies of the Presentence Report at least 35 days before sentencing. However, this requirement can be waived by the defendant. Fed. R. Crim. P. 32(e)(2). The uncontroverted record indicates Mr. Snyder attempted to meet with Wehausen to discuss the Presentence Report on several occasions, but Wehausen canceled each appointment, and declined to have Mr. Snyder send him a copy of the report via facsimile. *See* Snyder Decl. ¶ 9. However, counsel discussed on the telephone with Wehausen, the salient provisions of the report and likewise had Wehausen meet with Mr. Hunter to discuss the report. Wehausen signed a form dated August 18, 2008 indicating he received and reviewed the contents of the Presentence Report. Gov't's Ex. 3. This was more than the required 35 days before Wehausen's sentencing on October 31, 2008.

Even if the Court were to ignore Wehausen's signature indicating he received the report and Mr. Snyder's declaration, Wehausen waived any claim on this basis when he failed to object at his sentencing hearing. *See United States v. Townsend*, 178 F.3d 558, 562-63 (D.C. Cir. 1999). By participating in the sentencing proceedings, including addressing the Court, without objecting to his purported failure to receive a timely copy of the Presentence Report, Wehausen cannot now claim his counsel was ineffective for failing to provide him with the report. Finally, Wehausen cannot identify any prejudice from this alleged error. As previously explained, Mr. Snyder lodged objections to the portions of the presentence report Wehausen takes issue with, thus Wehausen cannot show how his receipt of the presentence report–assuming he did not in fact receive it or have knowledge of its contents–might have led to additional objections, much less changed the outcome of the proceedings.

3.     <u>The Government was not Required to Prove the Loss Amount at Sentencing Once Wehausen Stipulated to that Fact</u>

Petitioner next argues that Mr. Snyder failed to object to the Government's "motion" to increase the loss amount to $384,500 at sentencing. Pet'r's Mot. to Vacate Sentence at 7. Though the Government never made a formal motion, the Court reads Petitioner's motion to argue that Mr. Snyder failed to object to the Government's attempt to increase the loss amount for sentencing purposes. Petitioner further contends that Mr. Snyder never requested an evidentiary hearing and never required the Government to produce evidence of the increased amount. *Id.* at 8. The record proves otherwise.

Following Mr. Snyder's objections to the loss amount in the Presentence Report, the Court held a telephonic conference with counsel to discuss the disputed portions of the report. In response to the Court's question, the Government explained that while Wehausen himself received only $177,209[5] in kickbacks, his unindicted co-conspirator received additional amounts bringing the total for the conspiracy to $384,500. 9/22/08 Tr. at 5:13-24. In Defendant's Sentencing Memorandum and during the telephonic conference with the Court, Mr. Snyder argued the loss amount should be only $167,209. *Id.* at 6:24-7:7. In response to the Court's inquiry as to the whether this was a factual or legal issue, the parties agreed it was merely a factual dispute as to whether the additional amounts were part of the underlying conspiracy or entirely separate acts by the co-conspirator. *Id.* at 11:3-15. To establish the relationship of the additional kickbacks to the conspiracy, the Government stated it would provide one of the co-conspirators, Mr. Lillicotch, as a witness at an evidentiary hearing to show the additional

---

[5] The parties routinely referred to Wehausen's direct receipts as totaling $167,209, but Wehausen also admitted to receiving $10,000 in cash from Mr. Lillicotch as part of the scheme in addition to the $167,209. 09/22/11 Tr. at 24:1-23.

amounts were attributable to the same conspiracy. *Id.* at 7:16-24. Defense counsel, as did Mr. Hunter, strongly advised Wehausen not to contest the loss amount as it would not assist, in his view, in gaining a lesser sentence.

Mr. Snyder indicates he convinced Wehausen to withdraw his objections to the loss and restitution amounts following the teleconference. Snyder Decl. at ¶¶ 17-18. This is consistent with the filings in this case. Mr. Snyder pursued the objections with respect to the Presentence Report, in Defendant's Memorandum in Aid of Sentencing, and even before the Court in the teleconference. It was not until after the telephonic conference with the Court that Mr. Snyder withdrew the objections and waived the evidentiary hearing on October 20, 2008. Snyder Decl., Attach. L. Wehausen cannot credibly argue that his attorney's refusal to continue with a losing argument was somehow deficient representation, particularly when the only evidence in the record indicates Wehausen instructed his counsel to concede the loss and restitution amounts.

Once Wehausen stipulated that the loss amount was between $200,000 and $400,000, the Government was no longer required to prove the precise amount in order to trigger the increased guideline range. *Blakely v. Washington*, 542 U.S. 296, 310 (2004) ("When a defendant pleads guilty, the [Government] is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding."). Wehausen's citation to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), is misplaced. *Apprendi* only requires that elements that increase the defendant's sentence above the statutory maximum be found beyond a reasonable doubt. *Id.* at 490. Here, the two-level enhancement for the increased loss amount increased Wehausen's potential sentence from 33 to 41 months, well below the statutory maximum of 60 months for each count. 18 U.S.C. 3571(d). "*Apprendi* is not implicated here because appellant pleaded guilty and was not sentenced beyond the statutorily mandated

maximum." *United States v. Freeman*, No. 03-3038, 2004 WL 180268, at *1 (D.C. Cir. Jan. 21, 2004).

      4.      <u>Defense Counsel did not Err in Allowing the Restitution and Loss Amounts to Differ</u>

Petitioner further alleges that Mr. Snyder erred in allowing the loss and restitution amounts at sentencing to differ, in violation of the plea agreement. Pet'r's Mot. to Vacate Sentence at 10. Paragraph five of the Plea Agreement titled "forfeiture" states that Wehausen "agrees to the entry of a money judgment of forfeiture in a total amount equal to the defendant's sentencing loss as determined by the Court at the time of sentencing." However, the parties agreed to apportion the restitution amongst the co-conspirators, allotting Mr. Wehausen $188,941. *See* Presentence Report at 21. Wehausen argues Mr. Snyder should have reconciled the amounts, making sure the loss amount utilized the lower figure the parties stipulated to for restitution purposes. This argument is unpersuasive for two reasons. First, Wehausen specifically conceded the loss amount was between $200,000 and $400,000, and agreed to the apportioned loss of $188,941. Snyder Decl. At ¶ 18. Second, Mr. Snyder advocated for a loss amount even lower than the restitution amount, albeit unsuccessfully. Faced with the inability to exclude a co-conspirator's receipts as part of the total loss for the conspiracy, the fact that the parties reached an agreement making Wehausen liable in terms of restitution for only $188,941 rather than $384,500 (joint and several with the co-conspirators) demonstrates Mr. Snyder's competent legal representation of Wehausen's interests.

      5.      <u>Defense Counsel did not Err in Failing to Object at the Sentencing Hearing</u>

In the context of the sentencing hearing, Wehausen alleges Mr. Snyder was ineffective for (1) failing to resolve objections to the Presentence Report; and (2) failing to object to inadequate

proof of the restitution and loss amounts. Neither contention has merit. First, the defense withdrew its objection regarding the loss amount and requested the Court cancel the scheduled evidentiary hearing upon convincing Wehausen that continued objection was not a tactically sound position to adopt as it lacked evidentiary support. *See supra* at Part III.A.3. Wehausen's petition fails to identify any other outstanding objections, or even provide any argument as to how the prior objections would have been resolved in his favor at the sentencing hearing. Even if they had been resolved in his favor, the thirty three month sentence Wehausen received still would have been within the guidelines range for an offense level of 18 rather than 20. Thus even if Wehausen could show that continuing with the objection probably would have reduced the offense level to 18, Wehausen cannot show a sufficient probability that the Court would have imposed a shorter sentence to undermine confidence in the proceeding. Second, as the Court explained, because the Defendant stipulated to both the loss and restitution amounts, no proof was necessary. *Id.*

     B.    *Petitioner Failed To Show Counsel's Overall Performance Was Constitutionally Deficient*

The Court "assess[es] counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986) (quoting *Strickland*, 466 U.S. at 689)). Because "'[t]here are countless ways to provide effective assistance in any given case,' unless consideration is given to counsel's overall performance, before and at trial, it will be 'all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Id.* (quoting *Strickland*, 466 U.S. at 490).

Despite identifying several purported omissions or errors by his defense counsel,

Wehausen ultimately failed to show Mr. Snyder's overall performance was deficient. Mr. Snyder

negotiated a more favorable plea deal, objected to inaccuracies in the presentence reports,

zealously advocated for Wehausen's positions with regards to Wehausen's claim of work

performed for the kickbacks until realizing their futility, and secured a restitution amount

reducing Wehausen's liability by over $200,000. Combined with the seriousness of the offense,

Wehausen cannot credibly argue that Mr. Snyder's performance overall was constitutionally

deficient.

C.    *The Court Properly Applied Section 3553(a) In Determining Wehausen's*
      *Sentence*

Petitioner's final claim for relief alleges the Court failed to properly consider the factors

under 18 U.S.C. § 3553(a) in determining Petitioner's sentence, citing *United States v. Booker*,

543 U.S. 220 (2005). Following the Supreme Court's decision in *Booker*, Rule 11(b)(1)(M) was

amended so as to require the court to explain, in light of the now advisory sentencing guidelines,

"the court's obligation to calculate the applicable sentencing-guideline range and to consider that

range, possible departures under the Sentencing Guidelines, and other sentencing factors under

18 U.S.C. § 3553(a)." Fed. R. Crim. P. 11(b)(1)(M). In sentencing Wehausen, the Court took

great care in explaining the advisory nature of the guidelines and analyzing the factors relevant to

Wehausen's punishment. 10/31/2008 Tr. at 36:17-47:23. The Court evaluated, among other

things, Wehausen's age, criminal history, education, job history, income, mental health,

community involvement, his initiation of and involvement in the conspiracy, motive, the duration

of the scheme, and Wehausen's acceptance of responsibility by pleading guilty. *Id.* Wehausen

does not allege his sentence was substantively unreasonable, and given the Court's care in

17

determining Wehausen's sentence, he has not shown it was procedurally deficient.

## III. CONCLUSION

The record in this case conclusively establishes that Petitioner's claims are without merit. Defense counsel objected to errors in the Presentence Report, informed Petitioner of the contents of the report, and did not err in negotiating a lower restitution amount, or failing to object to stipulated facts. Moreover, Petitioner failed to show counsel's overall performance was constitutionally deficient, or that he was prejudiced by any error. Finally, the Court properly utilized the sentencing guidelines and § 3553(a) factors in determining Wehausen's sentence. Accordingly, the Court shall DENY Wehausen's § 2255 Motion in its entirety. An appropriate Order accompanies this Memorandum Opinion.

COLLEEN KOLLAR-KOTELLY
United States District Judge